124 P.3d 985

**IDAHO STATE BAR, Plaintiff–
Respondent,**

v.

**Scott A. EVERARD, Defendant–
Appellant.**

No. 30978.

Supreme Court of Idaho,
Boise, September 2005 Term.

Sept. 23, 2005.

Rehearing Denied Nov. 10, 2005.

Scott A. Everard, Spokane, Washington, pro se.

Bradley G. Andrews, Boise, for respondent.

EISMANN, Justice.

After the appellant was disbarred in the State of Washington, the Idaho State Bar instituted reciprocal disciplinary proceedings. The appellant contended that alleged procedural irregularities in the Washington disciplinary proceedings deprived him of due process. The Idaho Professional Conduct Board found that the appellant had not been deprived of due process in Washington and recommended a reciprocal sanction of a 180–day suspension from the practice of law to run concurrently with the disbarment imposed in Washington. We affirm the findings of the Professional Conduct Board and adopt its recommended sanction.

## I. FACTS AND PROCEDURAL HISTORY

This is a reciprocal attorney discipline case based upon the disbarment of appellant Scott A. Everard (Everard) in the state of Washington. Everard was admitted to practice law in Washington on November 20, 1990,

and practiced in Spokane. On April 9, 1998, the Washington Bar Association commenced disciplinary proceedings against him based upon his representation of three clients and his refusal to cooperate with the Bar's disciplinary investigation.

Counts 1 through 4 of the complaint dealt with Everard's representation of a Mr. Roberts. In October 1992, Roberts retained Everard to recover damages sustained in a recent car accident. Everard settled Roberts's claim against the tortfeasor for $25,000 (the maximum policy limits), but failed to give Roberts the check for six months, and then only after Roberts ran into him in a parking lot. Everard never resolved Roberts's underinsured motorist claim because Everard would not respond to the telephone calls and letters from the insurance adjuster. In June 1994 Roberts retained Everard to pursue a dental malpractice claim, but Everard failed to do so and would not respond to Roberts's attempts to contact him. After Roberts contacted the Washington Bar and fired Everard, eleven months elapsed before Everard would release Roberts's file and exhibits. The complaint alleged that Everard's conduct constituted lack of diligence, failure to reasonably communicate with clients, failure to pay funds to the client, and failure to take steps to protect the client's interest upon termination of representation in violation of the Rules of Professional Conduct.

Counts 5 through 8 of the complaint dealt with Everard's representation of a Ms. Johnson. She retained Everard to recover damages suffered in a 1991 automobile accident. That case went to mandatory arbitration in August 1995. The arbitrator sanctioned Everard $750 for failing to timely file his brief, but Everard's personal check in payment of that sanction bounced. The arbitrator awarded Johnson $6,294.50, and Everard told her that he would file an appeal of the award if he could not get the opposing party to agree to a larger recovery. He did not file the appeal, and did not attempt to collect the arbitration award. In September 1995 Johnson ran into Everard at a nightclub, and he falsely told her he had a $10,000 check for her at his office. For the next ten months, she tried unsuccessfully to contact Everard, but he would not return her calls. She retained another attorney, but it took three months for that attorney to be substituted as counsel in the matter because of Everard's refusal to cooperate. The new attorney was able to collect the arbitration award, less the $750 in sanctions imposed against Everard that he had failed to pay. The complaint alleged that Everard's conduct constituted lack of diligence, failure to expedite litigation, lack of reasonable communication, breach of duty to take steps to protect client's interest upon termination of representation, conduct prejudicial to the administration of justice, and conduct involving dishonesty, fraud, deceit, or misrepresentation.

Counts 9 through 11 of the complaint dealt with Everard's representation of a Mr. Gomez. Everard agreed to represent Gomez in a pending criminal matter, but failed to do so; failed to respond to Gomez's telephone calls; and refused for seventeen months to return Gomez's retainer. The complaint alleged that Everard's conduct constituted lack of diligence, lack of reasonable communication, breach of duty to promptly pay to client funds the client is entitled to receive, and breach of duty to take steps to protect client's interest upon termination of representation.

Count 12 of the complaint dealt with Everard's failure, over a period of two years, to cooperate with the Bar investigation. Count 13 alleged that Everard's conduct, as described in the complaint, demonstrated that he was unfit to practice law.

On June 18, 1998, default was entered against Everard in the disciplinary proceedings. The hearing officer then held a default hearing on July 30, 1998, and on August 21, 1998, he issued his findings of fact and conclusions of law and a recommendation that Everard be disbarred. The Disciplinary Board adopted the recommendation of the hearing officer, as did the Washington Supreme Court in its order of December 12, 2000, disbarring Everard. He filed a motion for reconsideration, which the Court denied on March 7, 2001. He then filed a petition for a writ of certiorari with the United States Supreme Court, which it denied on October 9, 2001.

On April 22, 2003, the Idaho State Bar commenced disciplinary proceedings against Everard seeking to impose reciprocal sanctions based upon the order of the Washington Supreme Court. In defense, Everard contended that the order of the Washington Supreme Court was invalid because he had been denied due process of law. The hearing committee found that he was afforded due process in Washington and, after an additional hearing on the appropriate sanction, it recommended that Everard be suspended from the practice of law in Idaho for a period of 180 days, with the suspension to run concurrently with the disbarment imposed in Washington.

## II. ISSUES ON APPEAL

A. Did the Idaho Professional Conduct Board have jurisdiction to recommend findings of fact and a sanction to this Court?

B. Is disbarment imposed in Washington void because Everard was denied due process of law in those disciplinary proceedings?

C. Was Everard denied due process by the delay in instituting these proceedings?

D. What is the appropriate sanction?

## III. ANALYSIS

■■■ In an attorney discipline matter, this Court reviews the hearing committee's decision to see if it was clearly erroneous or arbitrary and capricious. *Defendant A v. Idaho State Bar*, 140 Idaho 800, 102 P.3d 1119 (2004). When doing so, this Court independently reviews the record and assesses the evidence to see if the misconduct was proven by clear and convincing evidence. *Id.* The disciplined attorney bears the burden of showing that the evidence does not support the findings. *Id.* If the finding of misconduct is upheld, this Court bears the ultimate responsibility for determining what sanction should be imposed. *Id.*

### A. Did the Idaho Professional Conduct Board Have Jurisdiction to Recommend Findings of Fact and a Sanction to this Court?

Everard contends that the Professional Conduct Board of the Idaho State Bar (Idaho Board) lacked jurisdiction to make any recommendations in these proceedings because of two alleged procedural irregularities. The alleged irregularities are: (1) issuing an order to show cause containing a name stamp of the Idaho Board Chair rather than the Chair's handwritten signature; and (2) serving the order to show cause by regular mail rather than by certified mail, return receipt requested.

■■■ The name stamp on the order to show cause consisted of the Chair's name and the statement, "Mailed Without Signature to Avoid Delay." It was a sufficient signature to commence these proceedings. *See State v. Fees*, 140 Idaho 81, 90 P.3d 306 (2004) (judge's name on search warrant signed by peace officer at direction of judge had the same validity as if the judge had personally signed his own name). Everard does not contend that the Chair did not authorize the use of the name stamp on the order to show cause in place of her manual signature. Neither the Idaho Bar Commission Rules nor any other provision of law requires that the Chair of the Idaho Board personally sign the order to show cause rather than use a name stamp.

■■■ Idaho Bar Commission Rule 523(a) states, "Service of complaints and petitions under these Rules shall be made by certified mail, return receipt requested, to the lawyer's address as filed with the Idaho State Bar." The Bar's failure to mail the order to show cause by certified mail, return receipt requested, did not affect the validity of these proceedings. The return receipt would be important if there was an issue of whether Everard received the order to show cause. Because he appeared in these proceedings to defend against the order to show cause, however, that was not an issue.

### B. Is the Disbarment Imposed in Washington Void Because Everard Was Denied Due Process of Law in those Disciplinary Proceedings?

■■■ The formal complaint was filed in the Washington disciplinary proceedings on April

6, 1998. The complaint was served upon Everard by mail, and he responded by preparing and filing a written acknowledgement of service stating, "I agree that service was deemed personally served upon me on **Thursday, April 9, 1998.**" (Emphasis in original.) His acknowledgement of service also stated, "An Answer must therefore be filed on or before **Wednesday, April 29, 1998.**" (Emphasis in the original.) Everard did not answer the complaint, and on May 11, 1998, he was mailed a notice of motion for an order of default and a copy of the motion for an order of default. He still did not file an answer. On June 11, 1998, the Washington disciplinary counsel sent a letter to the hearing officer stating that Everard had failed to answer the complaint. A copy of that letter was sent to Everard. On June 18, 1998, the hearing officer entered Everard's default. A copy of the order of default was sent to Everard, and he received it on June 25, 1998.

On July 30, 1998, the hearing officer held a default hearing. On August 21, 1998, he issued findings of fact and conclusions of law and a recommendation that Everard be disbarred. On November 20, 1998, the Disciplinary Board (Washington Board) issued an order unanimously approving and adopting the hearing officer's findings of fact, conclusions of law, and recommendation.

The Washington Rules for Lawyer Discipline (RLD) provide two methods by which a disciplined lawyer can seek judicial review of the Washington Board's decision. RLD 7.1(a). If the Washington Board's decision provides for suspension or disbarment, the lawyer can file an appeal as a matter of right to the Washington Supreme Court. Such appeal must be filed within fifteen days of service of the decision of the Washington Board on the lawyer. RLD 7.2(b). A lawyer may also seek discretionary review of the Washington Board's decision by the Supreme Court by filing a petition for review within twenty-five days of service of the Washington Board's decision upon the lawyer. RLD 7.3. The Board's decision was served by mail upon Everard on November 23, 1998, but he did not file an appeal to the Washington Supreme Court, nor did he seek discretionary review of the decision.

On January 21, 1999, Everard, through his attorney, asked the Washington Supreme Court to stay the disciplinary proceedings. Everard agreed to an immediate disability suspension, and by order dated March 2, 1999, the Washington Supreme Court entered an order suspending him from the practice of law in Washington during the pendency of the disciplinary proceedings.

On May 21, 1999, Everard's attorney moved to set aside the default. Rule 4.10A of the RLD provides that default can be set aside on the following grounds:

(i) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining default;

(ii) For erroneous proceedings against a respondent who was, at the time of the default, incapable of conducting a defense;

(iii) Newly discovered evidence which by due diligence could not have been previously discovered;

(iv) Fraud, misrepresentation or other misconduct of an adverse party;

(v) The order of default is void;

(vi) Unavoidable casualty or misfortune preventing the respondent from defending; or

(vii) Any other reason justifying relief from the operation of the default.

Everard's motion sought relief based upon grounds (i), (ii), and (vi) listed above. In support of those grounds, it alleged that at the time of the default, Everard "was impaired from the traumatic, and untreated, brain injuries which he had received in an automobile accident in 1995." On February 8, 2000, the hearing officer denied Everard's motion to set aside the default. Everard appealed that denial to the Washington Board, which denied his appeal on July 14, 2000.

On August 10, 2000, Everard's attorney asked the Washington Supreme Court to grant discretionary review of both the order denying his motion to set aside default and the Washington Board's affirmance of that order. On October 11, 2000, the Court refused his request. On October 19, 2000, Everard filed a pro se motion to the Court

asking it to reconsider, which the Court denied on October 26, 2000.

On December 7, 2000, the Washington Supreme Court considered the Washington Board's findings of fact, conclusions of law, and recommendation of disbarment, and on December 12, 2000, it issued an order disbarring Everard from the practice of law, effective immediately.

On December 22, 2000, Everard filed a pro se motion with the Washington Supreme Court asking it to reconsider the order disbarring him from the practice of law. He submitted a brief arguing that there were various procedural irregularities that denied him due process. The Court denied Everard's motion for reconsideration by order issued on March 7, 2001.

In the reciprocal disciplinary proceedings instituted in Idaho, Everard contends that the Idaho Board could not rely upon the findings in Washington because there were various procedural errors in the Washington disciplinary proceedings that deprived him of due process. The Idaho Board found that Everard was not denied due process in the Washington disciplinary proceedings, and we agree.

■ The Full Faith and Credit Clause of the United States Constitution compels the states to give preclusive effect to the facts found by an administrative tribunal and court decisions of another state as long as the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause have been met. *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986); *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). An essential principle of due process is notice of the issues to be considered and the opportunity for an appropriate hearing before being deprived of a significant property interest. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

Everard was given notice of the issues to be considered in the Washington disciplinary

proceedings. The complaint consisted of sixteen pages that set forth in detail the facts supporting the allegations of misconduct. Although he contends that he was not notified that disbarment was a possible remedy, the complaint prayed for "imposition of discipline" which Everard admits could include disbarment. Rule 5.1 of the RLD clearly provides that upon a finding of misconduct, the sanctions can include disbarment.

Everard also had an opportunity for a hearing. He simply failed to avail himself of that opportunity by not filing an answer to the complaint. He likewise did not avail himself of the opportunity to appeal the Washington Board's decision to the Washington Supreme Court. The fact that he failed to avail himself of the full procedures provided under Washington law does not constitute a sign of their inadequacy. *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

■ Due process also requires an impartial hearing officer. *Hortonville Dist. v. Hortonville Educ. Ass'n,* 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976). Everard contends that he was denied due process because he was deprived of the opportunity to seek to disqualify the hearing officer in the Washington disciplinary proceedings. Rule 4.2(b) of the RLD provides that the lawyer who is the target of the disciplinary proceedings may seek to disqualify the hearing officer for cause by filing an appropriate request within twenty days of service on the lawyer of the name of the officer. Everard was served with the name of the hearing officer on June 9, 1998, and his default was entered June 18, 1998. He contends he was denied due process because he did not have the full twenty days to move to disqualify the hearing officer before default was entered.

Everard was served with the name of the hearing officer on June 9, 1998, and he had until July 2, 1998, to file a motion for disqualification.[1] The hearing officer did not hold the default hearing until July 30, 1998, and he did not issue his proposed findings of fact,

1. Because the notice was served by mail, Everard had three additional days in which to file the

motion for disqualification. RLD 12.12.

conclusions of law, and recommended sanction until August 21, 1998. Long before the hearing officer acted on the merits of the complaint, Everard could have moved to set aside the default and to disqualify the hearing officer, but he did not do so. Everard could have appealed this issue to the Washington Supreme Court, but he declined to do so. Although Everard's attorney later filed a motion seeking to set aside the default, Everard states that his attorney failed to raise these procedural errors in that motion. Everard's failure to avail himself of the full procedures provided under Washington law does not constitute a sign of their inadequacy. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

Everard did raise this due process argument in the motion for reconsideration that he submitted pro se to the Washington Supreme Court, but the Court refused to reconsider its order of disbarment. It apparently was not convinced that its order was void based upon this alleged irregularity.

### C. Was Everard Denied Due Process by the Delay in Instituting These Proceedings?

■■■ Everard contends that he was denied due process by former bar counsel's failure to commence reciprocal proceedings against him. On September 7, 2001, Everard sent former bar counsel a letter informing him that a discipline order had been entered against Everard in Washington, that Everard thought the proceedings in Washington were unconstitutional, and that he had sought a petition for certiorari to the United States Supreme Court. He later sent letters to and made telephone calls to former bar counsel, but no reciprocal disciplinary proceedings were instituted. It was not until new bar counsel was hired that these proceedings were instituted. Everard contends that such delay denied him due process of law because he could not seek to have his inactive Idaho license changed to an active license until these proceedings were terminated.

Everard's Idaho license to practice law became inactive in 1997 for his failure to pay the annual license fee. In 2000, he inquired as to what steps were required to be reinstated to active status with the Idaho State Bar. By letter dated April 13, 2000, the Bar informed him that he had to do the following:

1. Submit a written request for a change of status. Include any work and home address, phone number, fax number and e-mail address updates.

2. Pay back dues at the rate of an affiliate member for the year 1997 with the late fees as follows:

| Year | Affiliate Dues | Late Fee | Total |
|------|---------------|----------|--------|
| 1997 | $95.00 | $19.00 | $114.00 |
| 1998 | $95.00 | $19.00 | $114.00 |
| 1999 | $95.00 | $19.00 | $114.00 |
| | | | $358.00 |

3. Pay the current year's dues plus the client security fund assessment as follows:

| Dues | Late Fee | CSF Assessment | Total |
|------|----------|----------------|--------|
| $315.00 | $50.00 | $10.00 | $375.00 |

4. Submit a trust account certification form. (Form enclosed.)

5. Designate an Idaho agent for service of process if your legal residence is outside of Idaho. (Form enclosed.)

6. Submit a list of thirty (30) *Idaho approved* continuing legal education credits—including two (2) hours of ethics/professional responsibility—you have completed within the last three years; (Form enclosed) **or inform us in writing that you intend to complete no fewer than ten (10) hours of continuing legal education activity within sixty (60) days after you have been transferred to active status.**

7. Submit a statement indicating that you have not been subject to any formal or informal disciplinary proceedings, have not been disbarred or suspended from the practice of law in any state, and have not been convicted of any felonies or crimes involving moral turpitude.

(Emphasis in the original.) Nothing in either the letter or in the Idaho Bar Commission Rules required the completion of a reciprocal discipline action in Idaho before Everard could apply to be transferred to active status in Idaho.

These proceedings were formally commenced on April 22, 2003, when the complaint was filed. Everard has not pointed to any evidence in the record showing that he made any attempt to transfer to active status in Idaho during the over three years between the above-quoted letter from the Idaho State Bar and the formal commencement of these proceedings. There is no showing that the delay of former bar counsel in any way hindered Everard's ability to defend these proceedings or deprived him of due process. *See United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) (delay in instituting criminal prosecution does not violate due process unless the prosecutor delayed bringing the charges in a deliberate attempt to gain an unfair tactical advantage over the defendant or in reckless disregard of its probable prejudicial impact upon the defendant's ability to defend against the charges).

■ Everard also contends that at the commencement of the evidentiary hearing in this case, the Chair of the Idaho Board engaged in an improper prosecutorial act, thereby depriving Everard of due process. The formal complaint in these proceedings included as Exhibits A and B respectively copies of the Washington Supreme Court order dated December 12, 2000, disbarring Everard and its order dated March 7, 2001, denying reconsideration. At the commencement of the hearing, the Chair asked Everard if Exhibits A and B were true and correct copies of those orders, and Everard answered that they were. Everard now contends that such question indicated that the Chair was biased in favor of the Idaho State Bar. In his written response to the order to show cause issued in these proceedings, Everard stated, "Defendant Objects, Answers, Defends and Affirmatively Asserts that Reciprocal Discipline based upon the *Washington Supreme Court Order of Disbarrment* [sic], dated December 12, 2000, and *Denial of Reconsideration*, dated March 7, 2001, *should not issue*, for the following violative of Due Process reasons." (Emphasis in original.) On July 7, 2003, Everard submitted documents to the Idaho State Bar, including copies of both Washington Supreme Court orders. Everard's argument that the Chair's question demonstrated prosecutorial bias is too frivolous to require analysis.

■ Finally, Everard contends that the hearing in this matter was improperly held in Ada County rather than in Kootenai County, in violation of Idaho Bar Commission Rule 511(i). That rule states that a defendant attorney "has the right to have the hearing held in the county of his or her residence provided he or she has requested the same in his or her answer; otherwise, the hearing shall be at the place designated by the Chairman of the Professional Conduct Board." Everard's county of residence was Spokane County, Washington, not Kootenai County, Idaho. The Idaho Board initially scheduled the hearing in Kootenai County, but at Everard's request it moved the hearing to Boise, with the State Bar's agreement to pay Everard's round-trip airfare from Spokane to Boise. At the conclusion of the first day's hearing, the parties agreed to schedule the penalty phase of the proceeding at a later date. After notice was sent scheduling the second day of the hearing in Boise, Everard filed a written objection to having the hearing there instead of in Kootenai County. Everard had no right to have the hearing in Kootenai County, and he had previously agreed to have the place of hearing be in Ada County. His rights were not violated by having the hearing held in Ada County.

### D. What Is the Appropriate Sanction?

■ This Court bears the ultimate responsibility for determining what sanction should be imposed. *Defendant A v. Idaho State Bar*, 140 Idaho 800, 102 P.3d 1119 (2004). The Idaho Board recommended a suspension of 180 days. In *Idaho State Bar v. Malmin*, 139 Idaho 304, 78 P.3d 371 (2003), this Court adopted the recommendation of a six-month suspension for conduct similar to Everard's, although that case involved misconduct involving only one client instead of three. Considering the facts of this matter, including the length of time that Everard has been disbarred in Washington, his license to practice law in Idaho has not been active since 1997, and Idaho Bar Commission Rule 304(c)(5) empowers the State

Bar to require proof of competence to practice law if Everard applies for reinstatement, this Court concurs in the recommendation.

## IV. CONCLUSION

We suspend Everard from the practice of law in Idaho for a period of 180 days, commencing on the date of this opinion. Costs are awarded to respondent.

Chief Justice SCHROEDER and Justices TROUT, BURDICK and JONES concur.

